IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TENEACE JOHNSON, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION 11-0221-WS-M |
| | ) |
| TMI MANAGEMENT SYSTEMS, INC., | ) |
| | ) |
|     Defendant. | ) |

**ORDER**

    This matter comes before the Court on plaintiffs' Petition for Attorney's Fees, Expenses and Costs (doc. 41), with accompanying exhibits.  The undersigned having carefully reviewed the materials submitted by plaintiffs, the Petition is now ripe for disposition.

**I.    Background.**

    Plaintiffs, Teneace Johnson and Teresa Johnson, brought this action against defendant, TMI Management Systems, Inc. ("TMI"), alleging employment discrimination and retaliation, in violation of Title VII and 42 U.S.C. § 1981.  On August 7, 2012, the undersigned entered an Order (doc. 39) and Default Judgment (doc. 40) awarding judgment in favor of Teneace Johnson and against TMI in the amount of $96,494.36, and further awarding judgment in favor of Teresa Johnson and against TMI in the amount of $82,835.19.  Plaintiffs now request an award of attorney's fees, expenses and costs in the total amount of $42,000.41, including $40,602.50 in attorney and paralegal fees and $1,397.91 in costs and expenses.  Defendant is in default and, in any event, chose not to respond to the Petition despite being properly served with same on August 28, 2012.

**II.    Analysis.**

    *A.    Governing Legal Standard.*

    It is well settled that "Title VII authorizes the court to award 'a reasonable attorney's fee' to the prevailing party in a Title VII case."  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008); *see also* 42 U.S.C. § 2000e-5(k) ("In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party … a reasonable

attorney's fee (including expert fees) as part of the costs."). As the statutory language emphasizes, any such award "is clearly within the sound discretion of the trial court." *Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771, 775 (11th Cir. 1985); *see also Moore v. National Ass'n of Securities Dealers, Inc.*, 762 F.2d 1093 (D.C. Cir. 1985) (in Title VII context, "[a] reasonable attorneys' fee award is not mandatory, but is within the court's discretion"). The Court agrees with plaintiffs that an award of reasonable attorney's fees is appropriate in this case, and therefore exercises its discretion in favor of making such an award.[1]

It is well established that "[t]he starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate …. The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal citations and quotation marks omitted).[2] Of course, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1492 (11th Cir. 1994) (citation omitted); *see also Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) ("In calculating a reasonable attorney's fee award, the court must multiply the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services to reach a sum commonly referred to as the 'lodestar.' ... The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit."); *Reynolds v. Alabama Dep't of Transp.*, 926 F. Supp. 1448, 1453 (M.D. Ala. 1995) ("After calculating the

---

[1] Without question, a "reasonable attorney's fee" award under federal civil rights statutes may also encompass reasonable paralegal's fees incurred by a prevailing plaintiff. *See, e.g., Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (adopting "the self-evident proposition that the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys").

[2] *See also Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (to fashion a fee award, the court "is to multiply hours reasonably expended by a reasonable hourly rate"); *Mayson v. Pierce*, 806 F.2d 1556, 1557 (11th Cir. 1987) ("The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upward or downward.").

In determining a reasonable fee, federal courts consider the twelve factors articulated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), which are as follows: "1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to the acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the 'undesirability' of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340 n.7 (11th Cir. 1999); *see also Bivins*, 548 F.3d at 1350 ("In determining what is a reasonable hourly rate and what number of compensable hours is reasonable, the court is to consider the 12 factors enumerated in *Johnson*.").

The Court's examination and analysis of plaintiffs' fee petition and supporting exhibits proceeds in recognition of these principles. The Court has weighed all of the *Johnson* factors in evaluating the reasonableness of the claimed hourly rates and compensable hours, and in determining whether upward or downward adjustment is appropriate.

### B. *Reasonable Hourly Rate.*

Plaintiffs request a fee award calculated pursuant to the following hourly rates: Ann C. Robertson, Esq., $500; H. Wallace Blizzard, Esq., $300; paralegal Karen Allen, $125; and paralegal Jennifer Jackson, $125. The Court finds these requested rates to be substantially out of step with prevailing market rates for the relevant community, and therefore unreasonable.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). "The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (citation and internal quotation marks omitted); *see also Cullens*, 29 F.3d at 1494 ("The rate of attorney's fees is that of the place where the case is filed."). To be sure, a party may recover "the non-local rates of an attorney who is not from the

place in which the case was filed" upon a showing of "a lack of attorneys practicing in that place who are willing and able to handle his claims." *ACLU of Georgia*, 168 F.3d at 437.  At all times, "[t]he party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citation and internal quotation marks omitted).  Plaintiffs in this case have not satisfied their burden of establishing reasonableness of the claimed hourly rates.

Although this case was filed with the Clerk of Court in Mobile, Alabama, plaintiffs' fee petition says nothing about the prevailing hourly rates in this geographic area or the availability of qualified Mobile counsel to handle their case.  This omission is important because plaintiffs' counsel's law firm is located in Birmingham, and plaintiffs' evidentiary showing focuses on that market.  Evidence about what attorneys may or may not charge in Birmingham is unhelpful to the inquiry into whether the stated hourly rates would be reasonable in Mobile.  *See generally Coca-Cola Bottling Co., Consolidated, Inc. v. International Broth. of Teamsters, Chauffeurs, Warehousemen, and Helpers, Local Union No. 991*, 2006 WL 2032644, *6 (S.D. Ala. July 17, 2006) ("Prevailing market rates in Birmingham might reasonably be expected to differ substantially from those in Mobile."); *Allen v. McClain EZ Pack of Alabama, Inc.*, 2005 WL 1926636, *4 (S.D. Ala. Aug. 8, 2005) (discounting evidence of prevailing rates in Birmingham because "[t]his case … was filed in Mobile, not Birmingham").[3]

---

[3] Although attorney Robertson's Affidavit includes a blanket statement that the claimed hourly rates are "commensurate with the prevailing range of rates charged by attorneys … in the Alabama and Mobile legal community" (doc. 41, Exh. 1, at 6), she offers no factual support for that assertion.  In particular, she identifies no cases in which she or anyone else has been awarded a $500 hourly rate for employment discrimination plaintiffs' work in the Southern District of Alabama.  And the supporting affidavits offered by plaintiffs from attorneys at other law firms are largely unhelpful because (i) one is couched in terms of customary hourly rates "[i]n the Southeastern United States and Alabama" rather than the applicable local market; (ii) the other recites that the affiant's opinions are based on her being "generally familiar with the practice of civil rights and employment law in Alabama and nationwide," and mentions only a single instance in which the Northern District of Alabama awarded a requested $400 hourly rate in this type of matter; and (iii) neither supporting affidavit reveals any familiarity with or insights into prevailing market rates for this kind of work in Mobile.  Also, while plaintiffs have asserted that the prevailing rate should not be fixed by reference to the legal market in Selma, Alabama (where plaintiffs lived and worked) because of the paucity of available counsel in that community who were willing and able to take their case, they have offered neither evidence nor argument that the Mobile market (the community in which the Complaint was actually filed and
(Continued)

The undersigned had occasion in early 2010 to scrutinize and evaluate the prevailing market rates for highly experienced civil rights specialists in Mobile, Alabama. In *Trotter v. Columbia Sussex Corp.*, 2010 WL 383622 (S.D. Ala. Jan. 29, 2010), the Court considered a fee petition filed by a well regarded local plaintiff's attorney with nearly 30 years of experience, the overwhelming majority of which is in the fields of civil rights and constitutional law. The Court noted that attorney's "considerable reputation" and recognized him as "a specialist in civil rights litigation." *Id.* at *1.[4] The Court also pointed out that the movant and other "similarly experienced" attorneys had frequently (even routinely) been awarded fees of $250 per hour in this district. *Id.* Ultimately, the undersigned found in *Trotter* that a reasonable hourly rate for the attorney in question was $280 per hour, and that his co-counsel (a Mobile lawyer with 25 years of practice and having "superior experience, reputation and skill," albeit limited civil rights expertise) would be awarded a reasonable hourly rate of $250 per hour. *Id.* at *5.

In addition to the *Trotter* case, plaintiffs' counsel are keenly aware from their own experience in this District Court that the hourly rates they seek are substantially out of line with market rates for the Mobile area. *See Adams v. Austal, U.S.A., L.L.C.*, 2010 WL 2496396, *6 (S.D. Ala. June 16, 2010) (finding that reasonable hourly rates for attorney Robertson and other partners from Wiggins, Childs firm were $250, and that reasonable hourly rate for paralegal Allen was $75 in contingent-fee employment discrimination litigation in the Southern District of Alabama).[5] Particularly instructive is *Allen v. McClain EZ Pack of Alabama, Inc.*, 2005 WL 1926636 (S.D. Ala. Aug. 8, 2005). In *Allen*, the prevailing plaintiff in a Title VII employment

---

in which this action has been litigated) is not the suitable or appropriate unit of observation for purposes of applying the locality rule.

[4] This highly experienced, skilled and respected Mobile-based civil rights attorney sought an hourly rate of $300 per hour, which speaks volumes as to the prevailing market rate and the reasonableness of plaintiff's demand in this case for a $500 hourly rate. If a preeminent Title VII specialist in the local community views a reasonable market rate for his services as being $300 per hour in a case analogous to this one, then it is difficult to fathom plaintiffs' contention that the applicable market rate is actually a 67% markup of that figure.

[5] In the *Adams* opinion, Magistrate Judge Nelson opined that the requested hourly rate of $110 for paralegal Allen was "well above the market rate for this district," and more broadly concluded that "no extra-district compensation is warranted for fees" in that case. *Id.*

discrimination action in which the defendants had defaulted sought an award of attorney's fees of $450/hour for attorney Robertson's time and $95/hour for paralegal Allen's time. In deeming those hourly rates unreasonable, the undersigned pointed out that "a review of fee requests and awards in employment discrimination cases in this district reflects that the hourly rates of local employment counsel are far below the rate claimed by Ms. Robertson." *Id.* at *4. The Court found in that case that a reasonable hourly rate for attorney Robertson was $250, and that a reasonable hourly rate for paralegal Allen was $50. *Id.* at *5. Yet in this case, those same timekeepers seek to be compensated at hourly rates of double or more that which the undersigned found to be reasonable in *Allen* in 2005.

For all of the foregoing reasons, and after careful review of plaintiffs' evidentiary submission, the *Johnson* factors, and the Court's own "knowledge and expertise,"[6] with particular attention to counsel's skill, reputation, and experience as well as the prevailing market rates in the local community where the case was filed, the Court finds that a reasonable hourly rate for attorney Robertson is $280 per hour, and that a reasonable hourly rate for attorney Blizzard is $225 per hour.[7]

With regard to paralegal hourly rates, considerable precedent confirms that the $125 figure requested by plaintiffs is far in excess of the applicable prevailing rate. *See, e.g., SE Property Holdings, LLC v. Stradley*, 2012 WL 2130806, *4 (S.D. Ala. June 11, 2012) (where prevailing plaintiff in commercial dispute sought award for paralegal time at $110 per hour, observing that "[r]ecent opinions from this District Court reflect that the going rate for paralegals in the Mobile market is substantially lower"); *Branch Banking and Trust Co. v. Imagine CBQ, LLC*, 2012 WL 1987830, *3 (S.D. Ala. June 4, 2012) ("this district has customarily awarded

---

[6] *See Loranger*, 10 F.3d at 781 ("A court, however, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (citations and internal quotation marks omitted).

[7] In so doing, the Court concludes that attorney Robertson's hourly rate is properly fixed near the upper end of the range of fees attainable in the Mobile market for contingent-fee plaintiff's civil rights work, as was the hourly rate awarded in *Trotter*. The reasonable hourly rate for attorney Blizzard is reduced commensurate with his lower level of experience, while still recognizing that he has devoted the last decade to working almost exclusively on labor and employment law and civil rights actions.

$75.00 per hour … for paralegals in this district performing work traditionally performed by an attorney"); *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 2011 WL 1883009, *6 (S.D. Ala. May 17, 2011) ("Judges in this district have repeatedly approved paralegal rates of $75 an hour.") (citation omitted).  Plaintiffs have not endeavored to support a higher rate by showing, for example, that the paralegals involved in this action possess unusually advanced qualification or expertise; indeed, plaintiffs' fee petition is silent on the issue of those paralegals' qualifications, experience and skills.  Therefore, the Court will utilize a reasonable rate of $75.00 per hour for all allowable paralegal time herein.

      C.      ***Reasonable Hours.***

Of course, reasonable hourly rates are only one parameter in the lodestar calculation.  The other is the determination of reasonable hours.  In this regard, "[f]ee applicants must exercise what the Supreme Court has termed billing judgment. … That means they must exclude from their fee applications excessive, redundant, or otherwise unnecessary hours." *ACLU of Georgia*, 168 F.3d at 428 (citations and internal marks omitted).  Thus, the district court "must be reasonably precise in excluding hours thought to be unreasonable or unnecessary," and "is charged with deducting for redundant hours."  *Norman*, 836 F.2d at 1301.  "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary.  Courts are not authorized to be generous with the money of others." *ACLU of Georgia*, 168 F.3d at 428 (internal quotation marks omitted).

The Court has carefully reviewed the "PreBill" timesheet statements submitted by plaintiffs' counsel contemporaneously with their fee petition. (Doc. 41, Exh. 1, at Exh. A.)  With two notable exceptions, the Court is of the opinion that plaintiffs' counsel were economical, judicious and reasonable in their expenditure of resources and billing of hours in this matter.

The first exception concerns the damages hearing held on July 25, 2012.  The limited, narrowly circumscribed purpose of this short proceeding was for the Court to receive testimony from the two plaintiffs themselves concerning the emotional distress / mental anguish / nonpecuniary component of their claimed damages against defendant.[8]  The sole witnesses

---

[8] Nor was the narrow objective of the July 25 hearing a surprise to plaintiffs' counsel.  As early as March 1, 2012, the Court explained its intent to "set the matter for evidentiary hearing on plaintiffs' claims for compensatory damages for emotional distress." (Continued)

presented at the hearing (which was uncontested, as the defendant was in default and did not appear) were the two plaintiffs, each of whom testified for approximately 15 minutes concerning the subjective effects and emotional toll of TMI's discriminatory conduct. Yet, for this simple, straightforward proceeding, plaintiffs seek recovery for having two attorneys and one paralegal travel all the way from Birmingham to Mobile and back again, billing a total of 33.4 hours.[9] Plaintiffs have not explained why they chose to staff the hearing in this manner. Only one attorney spoke during the hearing, with both other legal professionals remaining silent at counsel table. Under the circumstances, the Court finds this aspect of plaintiffs' fee request to be unreasonable, and disallows the 11.0 hours claimed by attorney Blizzard and the 11.2 hours claimed by paralegal Allen for this hearing. *See, e.g., ACLU of Georgia*, 168 F.3d at 433 ("The time billed for excessive lawyers in a courtroom or conference when fewer would do may obviously be discounted.") (internal quotes omitted).

Second, review of the timesheets submitted by plaintiffs' counsel reveals that plaintiffs seek compensation at paralegal rates for purely clerical work performed by paralegals Allen and Jackson. Indeed, the time sheets are liberally sprinkled with entries such as "Update correspondence section of file," "telephone call to client re: scheduling appointment," "Receipt and download of Order," "Review of Court's Scheduling Order and Ann's calendar regarding same," "calendaring of Order," and so on. (Doc. 41, Exh. 1, at Exh. A.) The law is quite clear

---

(Doc. 31, at 4.) On April 18, 2012, the Court reiterated that "[w]ith respect to nonpecuniary damages and punitive damages, the Court will reserve ruling until after receiving plaintiffs' evidence at the forthcoming hearing, so as to have a full opportunity to evaluate the witnesses' credibility and demeanor." (Doc. 34, at 10.) This was all consistent with plaintiffs' counsel's understanding as expressed in a February 29, 2012 filing, wherein they stated as follows: "Given that Plaintiffs will seek compensatory damages in the form of emotional distress, inconvenience, etc., we believe that a hearing may be necessary for the Court to access [*sic*] the demeanor of the Plaintiffs when they explain the affect [*sic*] of the discrimination and unlawful termination." (Doc. 30, ¶ 3.) Certainly, plaintiffs' counsel neither expressed confusion nor requested clarification in advance as to the anticipated scope and purpose of the July 25 hearing.

[9]  In their original fee petition, plaintiffs' counsel sought an award of almost $10,000 in fees for their participation / attendance at the July 25 hearing alone. Even at the reasonable hourly rates set by this Court, this redundancy equates to plaintiffs seeking an award of more than $6,400 in attorney's fees for a 30-minute, routine, uncontested damages hearing where each of the two plaintiffs testified briefly about the emotional trauma inflicted by TMI's discrimination and retaliation. Such an award simply would not be reasonable.

that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *see also Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (applying *Jenkins* rule and indicating that "[w]e do not understand why attorney or even legal assistant skills were required" for tasks such as filing briefs, delivering documents, and so on); *Coleman v. Houston Independent School Dist.*, 1999 WL 1131554, *9 (5th Cir. Nov. 8, 1999) ("Paralegal expense is recoverable only to the extent that the work performed is similar to that typically performed by lawyers. … Otherwise, paralegal expense is an unrecoverable overhead expense."); *Imagine CBQ*, 2012 WL 1987830, at *3 ("As to reasonable paralegal fees, only time spent performing work traditionally performed by attorneys will be compensated.").

Faced with these circumstances, a court "has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350; *see also Loranger*, 10 F.3d at 783 ("where a fee application is voluminous, an hour-by-hour analysis of a fee request is not required"). Rather than parsing the voluminous time entries on a line-by-line basis to identify and exclude purely clerical work performed by the paralegals, the Court instead imposes a 20% across-the-board cut of paralegal Jackson's hours, and a 20% cut of paralegal Allen's hours (after subtracting out her time charged for attending the July 25 hearing). Accordingly, 3.8 hours of paralegal Jackson's time are excluded, as are 8.0 hours of paralegal Allen's time, for billings for purely clerical or secretarial tasks.

### D. *The Lodestar Amount and Adjustments to Same.*

Combining the reasonable hourly rates and reasonable hours, the lodestar amount is calculated as follows: (i) for attorney Robertson, 50.9 hours at $280/hour, or $14,252.00; (ii) for attorney Blizzard, 10.3 hours at $225/hour, or $2,317.50; (iii) for paralegal Allen, 31.8 hours at $75/hour, or $2,385; and (iv) for paralegal Jackson, 15.3 hours at $75/hour, or $1,147.50. This yields a total lodestar figure of $20,102.00.

"After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained. If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d at 1302 (explaining that the lodestar may be reduced for partial or limited success, or may be enhanced for "exceptional" results "that are out of the ordinary, unusual or rare"). Here, the Court finds that no enhancement or reduction is warranted

for results obtained.  More generally, the Court finds that the lodestar fee adequately reflects the skill and experience of the attorneys, and the complexity and difficulty of the litigation, such that no modification or adjustment of that figure is appropriate.  Accordingly, the reasonable attorney's fee award in this case will be fixed at **$20,102.00**.

> *E.     Costs and Expenses.*

Plaintiffs also seek to recover some $1,397.91 in expenses.  Prevailing Title VII plaintiffs may be awarded their costs; however, "this Court has clearly held that cost recovery is limited by 28 U.S.C. § 1920."  *Mock v. Bell Helicopter Textron, Inc.*, 2012 WL 246606, *2 (11th Cir. Jan. 27, 2012); *see also U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (in Title VII context, "a court may only tax costs as authorized by statute").  Also, pursuant to 42 U.S.C. § 1988, prevailing parties such as the Johnsons "may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client," provided that they must be reasonable.  *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (citations and internal quotation marks omitted); *see also Lambert v. Fulton County, GA*, 151 F. Supp.2d 1364, 1376 (N.D. Ga. 2000) (under § 1988 standard, "the Eleventh Circuit and district courts in this Circuit uniformly have allowed recovery of such expenses as photocopying, postage, long distance phone calls, necessary travel and on-line research").

Upon review of plaintiffs' evidentiary submission, the Court finds that all of the claimed costs and expenses are reasonable and recoverable, with the exception of (i) $37.07 in meal expenses pertaining to the July 25 hearing for legal personnel whose presence was not reasonably necessary; and (ii) the $10.00 parking ticket incurred by plaintiffs' counsel at that hearing.  Accordingly, the Court will award **$1,350.84** in costs and expenses to plaintiffs.

### III.     Conclusion.

For all of the foregoing reasons, Plaintiffs' Petition for Attorneys' Fees, Expenses and Costs (doc. 41) is **granted in part**, and **denied in part**.  Plaintiffs are **awarded** attorney's fees in the total amount of **$20,102.00**, and costs and expenses in the amount of **$1,350.84**.

DONE and ORDERED this 26th day of September, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE